**DONTZIN NAGY & FLEISSIG LLP**
980 MADISON AVENUE
NEW YORK, N.Y. 10075
TELEPHONE (212) 717-2900
FAX (212) 717-8088

HON. MICHAEL J. DONTZIN (1993-2012)
MATTHEW S. DONTZIN
TIBOR L. NAGY, JR.
DAVID A. FLEISSIG
TRACY O. APPLETON
JASON A. KOLBE

RUBEN G. PERLMUTTER
ANUJA D. THATTE
STEPHEN B. POPERNIK
MICHAEL J. LOCKMAN
DANIEL J. L. KACINSKI

**Via ECF**                                                                                         August 6, 2020

The Honorable Naomi Reice Buchwald
United States District Court Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:    *Deutsch v. Status Research & Development GmbH, et al.*, No. 20 Civ. 2815

Dear Judge Buchwald:

      I represent Defendant Status Research & Development GmbH ("Status") as well as Defendants Carl Bennetts and Jarrad Hope (the "Individual Defendants"), and write in response to Plaintiff Joel Deutsch's August 4 motion for alternative service upon the Individual Defendants (Dkt. No. 45) (the "Motion").[1]  In his Motion, Plaintiff makes multiple false and misleading assertions.  Plaintiff also fails to mention the fact that, before he filed the Motion, I spoke to Plaintiff's counsel about service and made a proposal to resolve the issue of service on the Individual Defendants by agreement—a proposal which Plaintiff's counsel accepted.  I write to address Plaintiff's false and misleading assertions, as well as to apprise the Court of the proposal I made to Plaintiff's counsel—which proposal should now govern and resolve this issue without further burdening the Court.  Alternatively, if Your Honor is not inclined to enforce that proposal, the Motion should be denied on the merits because, contrary to Plaintiff's baseless assertions about "vanishing" Defendants: (i) Defendant Status voluntarily waived service two months ago and (ii) residential addresses for both Mr. Bennetts and Mr. Hope are available online—a fact which, by itself, establishes that Plaintiff has failed to exercise reasonable diligence in effecting service.

---

[1] Because this response is submitted as a 3.5-page letter, we have not also filed a separate letter pursuant to Rule 2(E) of the Court's Individual Rules outlining the substantive arguments raised herein.  However, we are happy to provide such additional submission if Your Honor would like us to do so.

**I.   THE INDIVIDUAL DEFENDANTS PROPOSED RESOLVING THE ISSUE OF SERVICE BY AGREEMENT ON JULY 31—BEFORE PLAINTIFF FILED THE MOTION**

On July 31, after Plaintiff sought leave to file his Motion but before Your Honor granted that leave, I spoke to Plaintiff's counsel Kyle Roche and proposed that the parties resolve the issue of service on the Individual Defendants by agreement. Specifically, I told Mr. Roche that the Individual Defendants very likely would accept service of Plaintiff's operative pleading by agreement, so long as Plaintiff agreed (i) to share a copy of his forthcoming Second Amended Complaint (the "SAC") with me, so that the Individual Defendants could consider that pleading—which will be the operative pleading in this case[2]—at least once before agreeing to waive service; and (ii) that the Individual Defendants' waiver of service would be without prejudice to any issue, including personal jurisdiction (the "Proposal"). Mr. Roche told me that these terms were acceptable to Plaintiff. He also agreed to my request that Plaintiff make the SAC available to me by August 14. Thus, based on my conversation with Mr. Roche on July 31, it was clear that the parties had resolved the issue of service on the Individual Defendants by agreement, subject to Messrs. Bennetts and Hope having an opportunity to at least lay eyes on the SAC before agreeing to waive service.

**II.  PLAINTIFF BASELESSLY MALIGNS STATUS AND THE INDIVIDUAL DEFENDANTS—AND FAILS TO INFORM YOUR HONOR OF MY PROPOSAL AND HIS ACCEPTANCE OF IT**

Despite my conversation with Mr. Roche, Plaintiff did not inform Your Honor of my Proposal and his counsel's acceptance of it. Instead, after Your Honor granted Plaintiff leave to file his Motion, Plaintiff chose to pretend the Proposal was never made and to file a Motion riddled with false and misleading assertions.

For example, Plaintiff calls the Individual Defendants "unscrupulous actors" who purportedly sought to "take advantage of American markets, consumers and resources . . . and then skirt liability by vanishing into the fog of internet obscurity." Mot. at 1. But these assertions are utterly refuted by the record:

- Plaintiff fails to allege a single "unscrupulous act" by any Defendant. Tellingly, Plaintiff himself has not lost a penny on his purchases of the Status Network Tokens ("SNT") at issue in this case. Instead, according to his own allegations, Plaintiff has *profited* off SNT through (i) his 2017 purchases of SNT for $520.64, which he sold in early 2018 for $1,479.28 (*i.e.*, realized gains of $958.64), and (ii) his 2020 purchase of SNT for $35.11, which he could sell today for approximately $103.99 (*i.e.*, unrealized gains of $68.88). *See*

---

[2] Plaintiff's counsel filed the Original Complaint in this action on April 3. Plaintiff's counsel subsequently filed a First Amended Complaint (Dkt. No. 42) (the "FAC") on July 28. However, in the conference call with Your Honor on July 21, Plaintiff's counsel revealed that they intend to file yet another amended complaint—*i.e.*, their forthcoming SAC. Accordingly, it is already known that the FAC is not the operative pleading in this case—instead, the forthcoming SAC will be the operative pleading.

FAC, Ex. 1.[3]  Plaintiff literally has suffered no losses of any kind (realized or unrealized), and instead has made the profits referenced above—which begs the question, what (or who) led him to file this lawsuit in the first place?[4]

- Far from seeking to "take advantage of the American markets [and] consumers," Defendants expressly *excluded all American markets and consumers* from their sale of SNT tokens, which took place via a 2017 initial coin offering ("ICO")—including by barring U.S.-based IP addresses from participating in the ICO.[5]  Plaintiff's own allegations illustrate that those efforts to exclude American markets and consumers were successful: Mr. Deutsch never purchased any tokens from Status.  Instead, his purchases were secondary-market purchases made from non-parties to this litigation.

- Likewise, Plaintiff's telling Your Honor that Defendants seek to "skirt liability" by "vanishing" from this jurisdiction is glaringly contrary to the record.  Plaintiff fails to allege a single relevant connection between any Defendant and this jurisdiction.  Defendants do not reside here; have no offices or employees here; and, far from targeting U.S. consumers, went out of their way to *exclude* U.S. consumers from their token sale.  Tellingly, the only acts aimed at New York that Plaintiff alleges are a "conference" in "2019" and a "Launch Party" in "2020"—neither of which has any connection to (i) Status's token sale, which took place in 2017 or (ii) Mr. Deutsch, who is not alleged to have attended either the party or the conference.  *See* FAC ¶¶ 21, 55.  Despite those facts, Status voluntarily waived service of Plaintiff's complaint on June 8 (Dkt. No. 25).  And, before the present Motion was filed, the Individual Defendants made the aforementioned Proposal pursuant to which they expect to waive service, too.

Finally, as yet another example, Plaintiff claims that the Individual Defendants are "increasing the burden on the Court and Plaintiff, and necessitating this entirely avoidable motion practice," because they purportedly "refused to accept service."  Mot. at 5.  But, as shown above, the *opposite* is true: the Individual Defendants made the Proposal to accept service, Plaintiff accepted that Proposal, and Plaintiff then needlessly increased the burden on the Court (and on Defendants) by filing his false and misleading Motion.

---

[3] Plaintiff does not allege that he bought SNT in U.S. dollars, but rather that he bought them on secondary-market exchanges by trading cryptocurrencies for SNT.  The dollar values listed above are based on Plaintiff's own allegations regarding those trades.  *See* Dkt. No. 22, Ex. D.

[4] In another blockchain case filed by Plaintiff's same counsel on the same day as this one (*i.e.*, one of the twelve they filed), Judge Kaplan just this week denied their lead counsel application, expressing "doubts that the [plaintiff] group—rather than its lawyers—is truly in charge of the litigation" and "concern" that "future decisions by the group would be driven by the lawyers."  *Williams v. Block.One*, 20 Civ. 2809 (S.D.N.Y. Aug. 4, 2020) (Dkt. No. 57) at 5.

[5] *See* https://contribute.status.im/status-terms.pdf (ICO terms and conditions requiring participant to "represent[] and warrant[]," *inter alia*, that "the User is not a citizen or resident of the USA"); *see also* https://contribute.status.im/us-ip-detected.html (ICO landing page demonstrating that U.S. IP addresses were blocked).

**III.    YOUR HONOR SHOULD ADOPT THE TERMS OF THE PROPOSAL THAT THE INDIVIDUAL DEFENDANTS MADE—OR OTHERWISE SHOULD DENY THE MOTION ON THE MERITS BECAUSE PLAINTIFF HAS FAILED TO EXERCISE ADEQUATE DILIGENCE**

Given the record, Defendants respectfully request that Your Honor deny Plaintiff's Motion as moot (or otherwise hold it in abeyance) and order the parties to proceed in accordance with the terms of the Proposal. Specifically, Defendants respectfully request that Your Honor order that:

(i)   Plaintiff finally file the operative pleading in this case (*i.e.*, the forthcoming SAC) on or before August 14, 2020.

(ii)  Barring any unforeseen changes in that forthcoming pleading, and after having an opportunity to review it, the Individual Defendants expect to waive service of the SAC. They will commit to completing their review, and confirming that waiver of service, by no later than August 18, 2020.

Alternatively, if Your Honor is not inclined to enforce the Proposal, the Individual Defendants respectfully request that Your Honor deny the Motion on the merits because Plaintiff has failed to establish that he in fact acted with sufficient diligence. In fact, finding physical addresses for the Individual Defendants requires nothing more than an internet connection and simple online searches of commercial registers for Status and its officers and directors. Plaintiff, and his purported "private investigator," could not possibly have exercised reasonable diligence if they failed to even attempt such basic searches. *See, e.g.*, *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655, 2020 WL 1508748, at *13-*15 (S.D.N.Y. Mar. 30, 2020). And such conduct does not appear to be limited to this case. Judge Kaplan's recent decision in *Block.One* also observed that plaintiff's counsel's conduct to date "raises further doubts about their diligence in litigating this matter." *Williams v. Block.One*, 20 Civ. 2809 (S.D.N.Y. Aug. 4, 2020) (Dkt. No. 57) at 6.

Respectfully submitted,

/s/ Tibor L. Nagy, Jr.
Tibor L. Nagy, Jr.
Anuja D. Thatte
