**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| JOEL DEUTSCH, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　*Plaintiff,*<br><br>　　　vs.<br><br>STATUS RESEARCH & DEVELOPMENT GMBH, JARRAD HOPE, and CARL BENNETTS,<br><br>　　　　　　　　　　　　*Defendants.* |

No. 1:20-cv-02815-NRB

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 3

I.      STATUS'S INITIAL OFFERING OF THE SNT TOKEN ................................................ 3

II.     PLAINTIFF MADE MONEY ON HIS ONLY TRADES IN SNT ...................................... 3

III.    DEFENDANTS' LIMITED CONTACTS WITH THE UNITED STATES—AND COMPLETE
        LACK OF ANY CONTACT WITH DEUTSCH .............................................................. 5

PROCEDURAL HISTORY ..................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

I.      PLAINTIFF LACKS STANDING TO BRING THIS SUIT BECAUSE HE SUFFERED NO INJURY
        FROM PURCHASING SNT ........................................................................................ 7

        A.   The TAC Fails To Plead Any Injury In Fact ........................................................ 7

        B.   The TAC Fails To Plead A Causal Connection Between Any Injury And Any
             Complained-Of Conduct ..................................................................................... 9

        C.   The TAC Fails To Plead Any Redressable Harm ................................................ 10

II.     THIS COURT SHOULD DISMISS THE TAC BECAUSE IT FAILS TO STATE A CLAIM UPON
        WHICH RELIEF MAY BE GRANTED ........................................................................ 11

        A.   The U.S. And Florida Securities Laws Do Not Apply To Plaintiff's January 2020
             Purchase Of A Swiss-Issued Token On A Samoan Exchange ............................... 11

        B.   The TAC Fails To Plead Facts Establishing That Defendants Were "Statutory
             Sellers" ............................................................................................................... 14

        C.   Deutsch's Claims Are Untimely Under The Relevant Statutes Of Limitations
             And Repose ........................................................................................................ 17

             1.   Deutsch's Claims Are Untimely Under The Statute Of Limitations ............... 17

             2.   Deutsch's Federal Claims Are Untimely Under The Statute Of Repose ......... 18

        D.   Plaintiff's Section 15 Claim Should Be Dismissed Because It Is Derivative Of
             His Flawed Section 12(a)(1) Claim ..................................................................... 20

        E.   The Court Should Dismiss The Remaining State Blue Sky Claims ....................... 20

III.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS ........................ 21

        A.   The TAC Fails To Plead General Jurisdiction Over Status .................................. 21

        B.   The TAC Fails To Plead Specific Personal Jurisdiction Over Status ................... 22

1.  Plaintiff Fails To Plead Sufficient Minimum Contacts With The United States ...................................................................................................22

2.  Plaintiff's Claims Do Not Arise Out Of The Alleged Domestic Contacts .......24

C.  There Is No Basis For Personal Jurisdiction Over The Individual Defendants .......25

**CONCLUSION** ...................................................................................... 25

### List of Exhibits

| Ex. | Description |
|-----|-------------|
| 1 | Email correspondence between counsel reflecting Plaintiff's agreement to withdraw his claims based on the 2017-2018 Transactions. |
| 2 | Redlined version of Third Amended Complaint showing changes made compared to Second Amended Complaint. |
| 3 | Publicly available market price for SNT on certain dates, along with the corresponding profit and return for each date. |
| 4 | ZB.com's Terms of Use. |
| 5 | Relevant language from Swiss Commercial Register showing that Status's only office is in Zug, Switzerland. |
| 6 | Relevant excerpts from Status's publicly available ICO Terms and Conditions. |

## Table of Authorities

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)...................................................................................12

*Allen v. Credit Suisse Sec. (USA) LLC*,
   895 F.3d 214 (2d Cir. 2018).................................................................................7

*Altenel, Inc. v. Millennium Partners, L.L.C.*,
   947 F. Supp. 2d 1357 (S.D. Fla. 2013) .............................................................18

*American Express National Bank v. Joel Deutsch*,
   CACE19004152 (Fla.Cir.Ct.) (showing judgment by American Express
   against Mr. Deutsch for $119,098 in 2019) ........................................................4

*In re AOL Time Warner, Inc. Secs. & "ERISA" Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004)...............................................................4, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................7

*Brody v. Homestore, Inc.*,
   No. CV02–08068FMCJWJX, 2003 WL 22127108 (C.D. Cal Aug. 8, 2003) ........16

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016).................................................................................21

*C5 Med. Werks, LLC v. CeramTec GMBH*,
   937 F.3d 1319 (10th Cir. 2019) ...........................................................................24

*Calder v. Jones*,
   465 U.S. 783 (1984)..............................................................................................25

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018)...................................................................................22

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014).................................................................................12

*Commercial Union Assur. Co., plc v. Milken*, 17 F.3d 608, 615 (2d Cir. 1994) ...........11

*Connecticut v. Phys. Health Servs. of Conn., Inc.*,
   287 F.3d 110 (2d Cir. 2002).................................................................................10

*Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*,
   2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) ........................................................14

*CTS Corp. v. Waldburger*,
   573 U.S. 1 (2014) .............................................................................................19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ......................................................................................21, 22

*De Vito v. Liquid Holdings Grp., Inc.*,
   No. 15 Civ. 6969, 2018 WL 6891832 (D.N.J. Dec. 31, 2018) ..............................19

*Employers-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital
   Advisors*,
   498 F.3d 920 (9th Cir. 2007) ..............................................................................20

*F.W. Webb Co. v. State St. Bank & Tr. Co.*,
   2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) ...............................................14, 15

*FDIC v. Milken*,
   781 F. Supp. 226 (S.D.N.Y. 1991) ......................................................................25

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
   873 F.3d 85 (2d Cir. 2017) .................................................................................21

*GLK, L.P. v. Four Seasons Hotel Ltd.*,
   22 So. 3d 635 (Fla. Dist. Ct. App. 2009) .......................................................17, 18

*Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*,
   No. 11 Civ. 420 (RJH), 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) ....................23

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
   466 U.S. 408 (1984) ...........................................................................................22

*Holsworth v. BProtocol Foundation, et al.* ..............................................................6, 9

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) ...........................................................................................22

*Jewell v. Music Lifeboat*,
   No. 16–cv–1587 (NG) (PK), 254 F. Supp. 3d 410 (E.D.N.Y. 2017) .....................23

*King Cty., Wash. v. IKB Deutsche Industriebank, AG*,
   769 F. Supp. 2d 309 (S.D.N.Y. 2011) .................................................................25

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017) ........................................................................19

*Lopez v. Shopify, Inc.*,
  2017 WL 2229868, (S.D.N.Y. May 23, 2017) ....................................................................22

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  2012 WL 1994707 (S.D.N.Y. June 4, 2012) ......................................................................18

*Milan v. Wertheimer*,
  808 F.3d 961 (2d Cir. 2015)...............................................................................................7

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)........................................................................................14, 20

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010)........................................................................................................12, 13

*Nolfi v. Ohio Kentucky Oil Corp.*,
  675 F.3d 538 (6th Cir. 2012) ...........................................................................................17

*P. Stolz Family P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004)..............................................................................................19

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
  763 F.3d 198 (2d Cir. 2014)............................................................................................13

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 449 (S.D.N.Y. 2005)..............................................................................25

*Pinter. Rensel v. Centra Tech, Inc.*,
  2019 WL 2085839 (S.D. Fla. May 13, 2019) ..................................................................16

*Pinter v. Dahl*,
  486 U.S. 622 (1988)..............................................................................................14, 15, 17

*Plumbers' & Pipefitters' Local No. 562 v. J.P. Morgan Acceptance Corp. I*,
  No. 08-cv-1713 (ERK) (WDW), 2012 WL 601448 (E.D.N.Y. Feb. 23, 2012) ......................9

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*,
  753 F. Supp. 2d 166 (S.D.N.Y. 2010)..............................................................................13

*Pol. & Fire Ret. Sys. v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013)..............................................................................................19

*Randall v. Loftsgaarden*,
  478 U.S. 647 (1986)..........................................................................................................11

*Rayner v. E*TRADE Fin. Corp.*,
  248 F. Supp. 3d 497 (S.D.N.Y. 2017)................................................................................7

*Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*,
  No. 18-cv-3528 (SFJ)(ARL), 2019 WL 2504039 (E.D.N.Y. June 17, 2019)........................24

*Rensel v. Centra Tech, Inc.*,
  No. 17-24500-CIV, 2018 WL 4410126, (S.D. Fla. June 25, 2018)............................................8

*Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017).............................................................................................................19

*Richards v. Direct Energy Servs., LLC*,
  915 F.3d 88 (2d Cir. 2019).......................................................................................................21

*Ross v. AXA Equitable Life Ins. Co.*,
  115 F. Supp. 3d 424 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017).......................10

*In re Royal Bank of Scotland Group PLC Sec. Litig.*,
  765 F. Supp. 2d 327 (S.D.N.Y. 2011).......................................................................................12

*Royalty Network Inc. v. Dishant.com, LLC*,
  638 F. Supp. 2d 410 (S.D.N.Y. 2009).......................................................................................23

*Rozhetskin v. Reiman*,
  No. 06 Civ. 7119 (LAK), 2007 WL 3254911 (S.D.N.Y. Oct. 31, 2007) ...............................23

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
  773 F. Supp. 342, 372 n.40 (S.D. Fla. 1991) ..........................................................................14

*In re Scottish Re Grp. Sec. Litig.*,
  524 F.Supp.2d 370 (S.D.N.Y. 2007).........................................................................................20

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)................................................................................................................8

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
  No. 00 CIV. 8058, 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)..............................14, 15, 16

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)....................................................................................................................10

*Strubel v. Comenity Bank*,
  842 F.3d 181 (2d Cir. 2016)........................................................................................................7

*Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*,
  2010 WL 6864006 (S.D.N.Y. Dec. 14, 2010) .........................................................................17

*In re UBS Sec. Litig.*,
  No. 07 Civ. 11225, 2011 WL 4059356 (S.D.N.Y. Sept. 13, 2011) .........................................12

vi

*Wu v. Bitfloor, Inc.*,
  460 F. Supp. 3d 418 (S.D.N.Y. 2020)............................................................................3

*Ziemba v. Rell*,
  409 F.3d 553 (2d Cir.2005)..........................................................................................10

**Statutes**

15 U.S.C. § 77l.......................................................................................................11, 18

15 U.S.C. § 77m…................................................................................................. 17, 18

17 CFR § 230.169......................................................................................................16

The Florida Securities Act of 1978............................................................14, 20, 21

**Other Authorities**

Fed. R. Civ. P. 12.........................................................................................................7

SEC, *Framework for "Investment Contract" Analysis of Digital Assets* (2019) .........................18

## PRELIMINARY STATEMENT

This case is one of eleven class actions filed by the same lawyers on the same day.  Each case alleges that different blockchain tokens are unregistered securities. Defendants disagree, but this Court need not reach that issue because the cookie-cutter pleading asserted against the Defendants here suffers from multiple glaring defects that require dismissal with prejudice.

Defendants are Status Research & Development GmbH ("Status"), a blockchain technology company based in Switzerland, and Status's co-founders Carl Bennetts and Jarrad Hope, both of whom are foreign nationals residing abroad.  Defendants are alleged to have sold a cryptocurrency "token" or "coin" called the Status Network Token ("SNT") in an alleged "Initial Coin Offering" (the "ICO") in June 2017.  Plaintiff is a Florida resident who did *not* participate in Status's ICO, and who *made money* on his only purchases of SNT, all of which he made on foreign exchanges that are not parties to this lawsuit.

This case suffers from at least five fatal flaws, each of which requires dismissal:

**1. Plaintiff Suffered No Injury.**  As a threshold matter, Plaintiff suffered no injury and lacks standing to bring this lawsuit.  Plaintiff entered into two SNT transactions, only one of which is at issue here: in January 2020 (*i.e.*, just a few months before this lawsuit was filed), Plaintiff purchased $35 worth of SNT, all of which he continues to hold today (the "2020 Purchase").  Plaintiff's 2020 Purchase has *increased* in value since he bought it, and as of the filing of his Third Amended Complaint (the "TAC") it had a market value of $102, for a gain of 192% in ten months.[1] He therefore suffered no injury and lacks standing to bring any of his claims.

---

[1] As discussed *infra*, the market value of Plaintiff's SNT was even higher on the filing dates of his earlier pleadings. Plaintiff also purchased $521 worth of SNT in 2017, all of which he sold in 2018 for $1,479, for an annualized gain of 184% (the "2017-2018 Transactions").  *See* Dkt. 22-4.  Plaintiff listed the 2017-2018 Transactions in his PSLRA certification. Dkt. 42-1. However, Plaintiff has since agreed to withdraw his claims arising from his highly profitable 2017-2018 Transactions. *See* Ex. 1 to the Declaration of Tibor L. Nagy, Jr. (the "Nagy Declaration"), filed herewith. Unless otherwise noted, all references to "Ex. __" refer to the exhibits attached to the Nagy Declaration.

1

**2. Plaintiff's Claims Fall Outside The Territorial Limits Of U.S. Securities Laws.** The federal and state securities laws at issue here confine private rights of action to domestic transactions. Plaintiff's purchase of SNT through a foreign exchange falls outside that territorial limit. It is not enough for Plaintiff to allege that he placed his order from Florida, yet he offers nothing more, and courts routinely dismiss extraterritorial securities claims on that basis.

**3. Defendants Were Not "Statutory Sellers" To Plaintiff.** Even if the securities laws did apply, the registration provisions under which Plaintiff brings suit provide a cause of action only against "statutory sellers" who either (i) directly sold to Plaintiff or (ii) solicited his purchase. Defendants did neither and cannot be held liable for Plaintiff's remote secondary-market purchase.

**4. Plaintiff's Claims Are Time-Barred.** Plaintiff's federal claims are time-barred by a three-year statute of repose because SNT was first allegedly offered to the public in 2017, more than three years before Plaintiff Joel Deutsch ("Deutsch") filed his claims. That three-year expiration date is an absolute bar to his federal claims that is not subject to any exceptions.

In addition, all of Plaintiff's claims are barred by the 1-year and 2-year statutes of limitation ("SoL") applicable to his federal and Florida claims, respectively. Because Plaintiff did not purchase SNT from Defendants, the SoLs run from the date of Defendants' alleged acts of *solicitation*, not from the date of Plaintiff's purchase. The TAC fails to allege any act of solicitation by Defendants that (i) led to Deutsch's 2020 Purchase and (ii) occurred within the 1-year or 2-year SoLs applicable to his claims.

**5. The Court Lacks Personal Jurisdiction Over Defendants.** Plaintiff's secondary-market purchase also provides no basis for jurisdiction over any of the foreign Defendants here. The TAC fails to allege facts sufficient to justify hailing these overseas Defendants into a New York court based on claims by a Florida resident unable to identify even a single communication— much less a single meeting or transaction—he ever had with any of them. Instead, copying

2

conclusory allegations from his counsel's other complaints, Deutsch does nothing more than point to incidental contacts wholly unrelated to his 2020 Purchase, such as Status's globally accessible website (which Deutsch never visited), globally accessible app (which Deutsch never used or even downloaded), and globally accessible social media posts (which Deutsch never read). Those contacts are insufficient to establish jurisdiction over any of the Defendants.

Despite multiple amendments, Deutsch cannot cure the defects of his time-barred claims seeking to hold foreign defendants liable for his profitable secondary-market trade on a foreign exchange. The TAC should be dismissed in its entirety, with prejudice.

## FACTUAL BACKGROUND[2]

### I.   STATUS'S INITIAL OFFERING OF THE SNT TOKEN

Status is the developer of an open source messaging platform and mobile interface to interact with decentralized applications that run on the Ethereum Network, and is the creator of the "Status Network Token" ("SNT").  ¶¶ 1, 16.  This case arises out of Status's alleged efforts to offer and sell SNT.  According to the TAC, Status issued a "whitepaper" concerning SNT in June 2017 (the "Whitepaper"), simultaneously "promoted" its ICO, and first sold SNT on June 20, 2017. ¶¶ 55-59.

### II.   PLAINTIFF MADE MONEY ON HIS ONLY TRADES IN SNT

The only named Plaintiff in this case, Joel Deutsch, is a resident of Miami, Florida.  ¶ 15. Deutsch did *not* participate in Status's ICO.  ¶¶ 55-59.  He made only two transactions in SNT, both of which have been extremely *profitable*.  *See* Dkt. 42-1; *see also* Dkt. 22-4.

---

[2] The facts are taken from the TAC and the documents referenced therein, of which Defendants request the Court take judicial notice. *See Wu v. Bitfloor, Inc.*, 460 F. Supp. 3d 418, 423 (S.D.N.Y. 2020) (considering documents referenced in the complaint).  Unless otherwise noted, (i) all references to "¶ __" refer to the TAC and (ii) all emphasis in quotations was added by Defendants.

First, in 2017, Plaintiff purchased $521 worth of SNT on a non-party exchange called Bittrex. *See* Dkt. 42-1; Dkt. 22-4. Plaintiff then sold all of that SNT in 2018 for $1,479, yielding an annualized gain of 184%. *Id.* After Defendants filed their pre-motion letter concerning the present motion to dismiss (Dkt. 69, the "Pre-Motion Letter"), Deutsch withdrew all of his individual claims related to these profitable 2017-2018 Transactions. *See* Ex. 1.

Second, after two years without any trading in SNT, Deutsch suddenly purchased a nominal amount of SNT in January 2020, shortly before this lawsuit was filed.[3] Dkt. 22-4. Plaintiff paid $35 for that 2020 Purchase. *Id.* Since his 2020 Purchase, the price of SNT has increased.[4] For example, as of June 8, 2020—*i.e.*, the date Deutsch moved to be appointed lead plaintiff—Deutsch's 2020 Purchase had increased in value from $35 to $113.44. Dkt. 22-4. The TAC does not allege that Deutsch has suffered any losses on his 2020 Purchase.

According to his PSLRA certification (the "Certification"), Deutsch made his 2020 Purchase on a non-party foreign exchange called ZB.com ("ZB" or "ZB.com"). Dkt. 42-1. The TAC does not allege that ZB is a domestic exchange, nor could it do so: ZB is a foreign company incorporated in Samoa. *See* Ex. 4. When Deutsch made his $35 purchase on ZB.com, he agreed to ZB's terms and conditions, which provide that all disputes are governed by Samoan law and will be litigated in Samoa. *Id.* Just as Deutsch readily purchased SNT in January 2020 on ZB.com,

---

[3] Given the fact that Plaintiff's counsel simultaneously filed 11 class action complaints on April 3, 2020, Plaintiff's counsel apparently *already were drafting their complaint against Status* when Deutsch experienced his sudden renewal of interest in SNT and made this $35 purchase. Plaintiff's sudden renewal of interest in SNT not only occurred very shortly before he chose to file this lawsuit, but also occurred shortly after American Express obtained a judgment against him for over $119,000 in unpaid credit card bills. *See American Express National Bank v. Joel Deutsch*, CACE19004152 (Fla.Cir.Ct.) (showing judgment by American Express against Mr. Deutsch for $119,098 in 2019).

[4] The market price of SNT is publicly available and is subject to judicial notice. *See In re AOL Time Warner, Inc. Secs. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 245 n.61 (S.D.N.Y. 2004) (taking judicial notice of the price of publicly traded bonds to dismiss plaintiff's claim for lack of Article III injury in fact). For the Court's convenience, attached as Exhibit 3 is a chart showing the market price of SNT as of (i) today's date, the date that Deutsch (ii) made his January 2020 Purchase, (iii) moved to be appointed lead plaintiff, and (iv) filed each of his three pleadings, along with the corresponding profit and return for each date.

he can readily sell it today on ZB.com for a tidy profit.  According to his Certification, Deutsch purchased "3903" units of SNT on ZB.com's "SNT/USDT" market for a price of "0.00896964," for a total cost of $35.  Dkt. 42-1.  Deutsch can sell all 3903 units of his SNT today on ZB.com's "SNT/USDT" market for a price of "0.04123," for a total of $160—a gain of 359.67%.  Ex. 3.

## III.   DEFENDANTS' LIMITED CONTACTS WITH THE UNITED STATES—AND COMPLETE LACK OF ANY CONTACT WITH DEUTSCH

Defendants are one foreign entity and two foreign individuals involved in developing the Status Network.  ¶¶ 16-18.  Defendant Status is a Swiss entity headquartered in Zug, Switzerland.  ¶ 16; Ex. 5.  It has no offices in New York (*see* Ex. 5), and was served by Plaintiff in this case at its Swiss headquarters.  Dkt. 5.  According to the TAC, despite the lack of any offices in the United States, Status has two "contributors" who work from the United States.  ¶ 22.  Specifically, Plaintiff alleges that two "of the Status team's 'Core Contributors' that are advertised on the Status website operate from within the United States, including Status's Head of Marketing, who operates from New York City, and Status's Chief Security Officer, who operates from Maryland."  *Id.*  According to the TAC, these "Core Contributors" are either "agents and/or employees."  *Id.*  Deutsch is not alleged to have communicated with either of these "contributors," and the TAC alleges no details or facts concerning the actual contractual relationship, if any, that these "contributors" have with Status.  *Id.*  The TAC does not allege any other physical presence by Status in the U.S., apart from allegations that unnamed Status representatives attended a handful of blockchain conferences in various U.S. cities over a period of several years.  ¶¶ 22, 74.  Deutsch is not alleged to have attended any of those conferences, or to even have been aware of them.  *Id.*

The individual defendants are Status's co-founders Carl Bennetts and Jarrad Hope, both of whom are foreign nationals residing abroad.  ¶¶ 17-18.  Neither is alleged to have regular contact with the United States, and neither is even *mentioned* in any of the TAC's substantive allegations.

The TAC does not allege any communications between the individual defendants and Deutsch, nor does it allege any instance in which the individual defendants traveled to the U.S.

As shown in the ICO's terms and conditions, Status excluded U.S. residents from its 2017 ICO. Ex. 6, at *8. Consistent with that exclusion, the TAC fails to identify a single sale of SNT by any Defendant to any U.S. resident, including Deutsch. Unable to make any such allegation, the TAC instead relies on generalized allegations—largely copied verbatim from Deutsch's counsel's other complaints[5]—that Status "promoted" the sale of SNT on secondary markets, including in the United States. ¶¶ 55-74. This alleged "promotion" consisted of "generalized solicitations using statements posted on the Internet and distributed throughout the United States and worldwide," such as Status's globally available website, app, and Twitter posts. ¶¶ 7-8, 63-73. The TAC fails to allege that Deutsch ever visited Status's website, downloaded its app, read any of its Twitter posts, or ever communicated in any way—directly or indirectly—with Defendants. *Id.*

**PROCEDURAL HISTORY**

This case originally was filed by Alexander Clifford on April 3, 2020. Dkt. 1. Mr. Clifford is no longer a named plaintiff in this case. Instead, on June 8, Joel Deutsch moved to be appointed lead plaintiff (Mr. Clifford did not so move). Dkt. 20. On July 22, the Court appointed Deutsch as sole lead plaintiff. Dkt. 39. On July 28, Deutsch filed the First Amended Complaint, his first pleading in this action. Dkt. 42. On September 11, Deutsch filed a Second Amended Complaint. Dkt. 55.

---

[5] For example, *compare* ¶¶ 55-74 *with* Plaintiff's counsel's Second Amended Complaint in the simultaneously-filed case of *Holsworth v. BProtocol Foundation, et al.* (1:20-cv-02810, currently pending before Judge Hellerstein, hereinafter "*Holsworth*") at Dkt. 50 ¶¶ 59-71.

On October 23, Defendants filed their Pre-Motion Letter. Dkt. 69. On October 28, Plaintiff filed his pre-motion letter. Dkt. 70. On November 12, 2020, Deutsch filed the TAC. Dkt. 75.

## ARGUMENT

A complaint fails under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). On a motion to dismiss, a court "need not accept conclusory allegations or legal conclusions couched as factual [] allegations." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). Accordingly, "bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018). A court "may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken" in deciding a motion to dismiss. *Rayner v. E\*TRADE Fin. Corp.*, 248 F. Supp. 3d 497, 500 (S.D.N.Y. 2017).

## I.   PLAINTIFF LACKS STANDING TO BRING THIS SUIT BECAUSE HE SUFFERED NO INJURY FROM PURCHASING SNT

Plaintiff's claims fail at the threshold because his own pleading and PSLRA Certification establish that he has suffered no injury and therefore lacks standing. To establish Article III standing, "a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Strubel v. Comenity Bank*, 842 F.3d 181, 187-88 (2d Cir. 2016). The TAC glaringly fails to plead facts establishing any of those elements.

### A.   The TAC Fails To Plead Any Injury In Fact

Deutsch's own PSLRA Certification establishes that his transactions in SNT resulted only

in realized and unrealized gains—and no losses.  *See* Dkt. No. 42-1; Dkt. 22-4.  For this reason alone, Deutsch lacks standing, and his complaint should be dismissed.

In his earlier pleadings, Deutsch claimed to have "sustained damages" due to an alleged "loss in market value" of his SNT.  *See, e.g.,* FAC ¶ 88; SAC ¶ 121.  In our Pre-Motion Letter, Defendants pointed out that Deutsch's own PSLRA Certification refutes that allegation.  *See* Dkt. 69.  In response, Deutsch withdrew his claims based on his profitable 2017-2018 Transactions.  Ex. 1.  He also revised his pleading by changing the allegation that he "sustained damages" due to an alleged "loss in market value" of his SNT to a new theory that he was "injured" merely by his "purchase of unregistered SNT tokens" that he continues to "hold":

> 130.  ~~121.~~ Plaintiff and members of the Class ~~sustained damages from~~ were injured by Defendants' common course of unlawful conduct based upon ~~the loss in market value of the~~ their purchase of unregistered SNT tokens that they continually hold or sold at a loss.

*See* Ex. 2 at p. 44.

Deutsch's new theory fails to allege any actionable injury.  It is settled law that an alleged violation of a statutory provision, without any resulting injury in fact, fails to confer standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("[A] plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").  This bedrock principle of standing applies to claims of unregistered securities.  *See Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2018 WL 4410126, at *2 (S.D. Fla. June 25, 2018), *report and recommendation adopted*, No. 17-24500-CIV, 2018 WL 4828444 (S.D. Fla. Sept. 25, 2018) (plaintiff failed to demonstrate an injury under Section 12(a)(1) because his purchase of the allegedly unregistered security had netted him a profit); *In re AOL Time Warner*, 381 F. Supp. 2d at 245-46 (finding plaintiffs did not have Article

III standing to bring Section 11 and Section 12 claims when the value of their purchased bonds increased, rather than decreased, at the time of bringing suit); *Plumbers' & Pipefitters' Local No. 562 v. J.P. Morgan Acceptance Corp. I*, No. 08-cv-1713 (ERK) (WDW), 2012 WL 601448, at *10 (E.D.N.Y. Feb. 23, 2012) (dismissing Section 11 and 12(a)(2) claims where the class plaintiff could not allege an economic loss for the two certificates it sold for a profit and no loss).

Nor can Deutsch rely on any post-filing fluctuations in the price of SNT as a potential basis for standing.  First, the market price of SNT remains higher than its January 2020 price, and in particular was higher on the filing dates of each of Deutsch's pleadings.  *See* Ex. 3.  Second, as Deutsch's own lawyers have stated in the simultaneously-filed *Holsworth* case (which involves a token referred to as "BNT"), post-filing fluctuations in price "have no bearing on Plaintiff's standing":

> Nor can Defendants argue that post-filing fluctuations in the price of BNT retroactively undercut Plaintiff's standing. "Locking in the applicable damages at the filing of the first complaint promotes the statutory scheme" of the securities laws "by holding defendants liable" for violations. *In re Barclays Bank PLC Sec. Litig.*, 2016 WL 3235290 (S.D.N.Y. June 9, 2016) (considering § 11 claim). Changes in BNT's price have no bearing on Plaintiff's standing to bring the claims in the SAC [*i.e.*, Holsworth's Second Amended Complaint].

*Holsworth*, Dkt. 57, at 8.  In Deutsch's case, "locking in the applicable damages at the filing of the first complaint" confirms Deutsch had substantial profits, and no losses.  *See* Ex. 3.  Nor does the TAC identify any losses sustained by Deutsch.

## B.   The TAC Fails To Plead A Causal Connection Between Any Injury And Any Complained-Of Conduct

The TAC also fails to plead any causal connection between any injury suffered by Deutsch and the Defendants' alleged solicitations.  Deutsch's transactions are not even *mentioned* in the TAC—instead, the only mentions of Deutsch's transactions are in his motion to be appointed lead plaintiff and in his PSLRA Certification.  Dkt. 22-4, Dkt. 42-1.  Failing to even mention those transactions, the TAC utterly fails to allege any causal connection between (i) Defendants' alleged

wrongful conduct and (ii) Deutsch's alleged injury.  *See Ziemba v. Rell*, 409 F.3d 553, 554–55 (2d Cir.2005) (in order to show a "causal connection between the injury and the conduct complained of . . . the injury has to be fairly . . . traceable to the challenged action of the defendant"); *see also Ross v. AXA Equitable Life Ins. Co*., 115 F. Supp. 3d 424, 436 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017) (granting motion to dismiss a putative class action for lack of standing because plaintiffs could not trace their alleged harm to plaintiff's omissions or misrepresentations).

### C.        The TAC Fails To Plead Any Redressable Harm

Finally, the TAC fails to plead facts establishing that Deutsch's alleged "injury" is redressable by this Court.  To the contrary, Deutsch's pleading and his PSLRA Certification establish that his purported "injury" is *not* redressable here.  That is because, given his admitted lack of any damages, Deutsch has now pivoted to seeking "rescission" as his sole remedy.  But "rescission" is not available here because *Deutsch did not purchase his SNT from Defendants*—he purchased it on the ZB.com exchange, from a party not before this Court.  Dkt. 42-1.  He therefore fails to plead redressability and lacks standing for that reason alone.  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106-07 (1998); *see also Connecticut v. Phys. Health Servs. of Conn., Inc.*, 287 F.3d 110, 118 (2d Cir. 2002) (finding lack of standing where "[n]one of the remedies being sought would flow to [the plaintiff]").

The lack of redressability is particularly glaring here because, even with respect to the non-party from whom Deutsch purchased his SNT, Deutsch's claim for "rescission" is a contrived claim that is not based on any actual injury or live dispute: "rescission" here means an order compelling the seller to give Deutsch back his $35 in exchange for Deutsch tendering back his 3903 SNT. Given the fact that Deutsch's SNT is now worth substantially *more* than what he paid for it, the seller plainly would rescind the sale voluntarily, such that there is no live dispute—and thus no

basis for a lawsuit. This is not merely hypothetical: ZB.com has a market price today for Deutsch's 3903 SNT that is substantially higher than $35. Ex. 3. If Deutsch truly seeks "rescission," he does not need an order from this Court to get it. Instead, he can simply log back into his ZB.com account and sell his 3903 SNT on the same exchange on which he purchased it—for far more than $35. *Id.*

Finally, rescission is also unavailable here for another reason: under the Securities Act and its Florida analog, parties compelled to rescind a sale are entitled to an offset for any gains the plaintiff enjoyed. *See* 15 U.S.C. 77*l*(a); *cf. Randall v. Loftsgaarden*, 478 U.S. 647, 655, 657 (1986) (noting that a plaintiff seeking rescission under Section 12 must be offset by any "income received," meaning "payments in cash or property received by virtue of ownership of a security"). Here, Deutsch's claim for "rescission" is based on two false assumptions: (i) Defendants sold the 3903 SNT to him and (ii) Deutsch is unable to sell his 3903 SNT today for $35 or more and requires a Court order compelling rescission. To the extent the Court entertains those false assumptions, Deutsch's claim for rescission still would fail to plead any redressable harm because Deutsch enjoyed profits of $888 on his 2017-2018 Transactions (*see* Dkt. 22-4), and Defendants would be entitled to offset Deutsch's fictional $35 "injury" by the amount of those profits. *See Commercial Union Assur. Co., plc v. Milken*, 17 F.3d 608, 615 (2d Cir. 1994) (holding that because defendant-seller was entitled to an offset from plaintiffs-securities purchasers, "the net result . . . is that [plaintiffs] have not suffered compensable damages under § 12(2).").

## II. THIS COURT SHOULD DISMISS THE TAC BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Even apart from the lack of standing, Deutsch's claims fail on the merits because they are untimely, extraterritorial, and inadequately pled.

### A. The U.S. And Florida Securities Laws Do Not Apply To Plaintiff's January 2020 Purchase Of A Swiss-Issued Token On A Samoan Exchange

Deutsch's claims should be dismissed on the merits because they impermissibly seek to

apply the securities laws to extraterritorial conduct. "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). Under *Morrison* and its progeny, Plaintiff's claims are limited to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 66 (2d Cir. 2012).

Plaintiff does not allege that his 2020 Purchase was a transaction "in securities listed on domestic exchanges," nor could he do so: ZB.com is a foreign exchange incorporated in Samoa. Ex. 4.  While the TAC identifies several specific exchanges that it alleges are "incorporated or headquartered in the United States" (¶ 60), it pointedly does *not* make any such allegation about ZB.com.

Similarly, Plaintiff's purchase of SNT was not a "domestic transaction," either. To sufficiently allege a domestic transaction, "plaintiff must allege facts suggesting that irrevocable liability was incurred or title was transferred within the United States." *Absolute Activist*, 677 F.3d at 68.  Deutsch fails to allege any such facts and instead relies solely on the allegation that he placed his order on ZB.com from within the United States. ¶ 15.

The Second Circuit has squarely addressed this issue, holding that "the fact that a U.S. entity places a buy order in the United States for the purchase of foreign securities on a foreign exchange is insufficient to incur irrevocable liability, as set forth in *Absolute Activist*, in the United States." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188–89 (2d Cir. 2014) (affirming dismissal); *see also In re Royal Bank of Scotland Group PLC Sec. Litig.*, 765 F. Supp. 2d 327, 337 (S.D.N.Y. 2011) (noting that "Plaintiffs approach—that it is enough to allege that Plaintiffs are U.S. residents who were in the country when they decided to buy RBS shares— is exactly the type of analysis that *Morrison* seeks to prevent"); *In re UBS Sec. Litig.*, No. 07 Civ.

11225, 2011 WL 4059356, at *7–8 (S.D.N.Y. Sept. 13, 2011) ("There is nothing in the text of *Morrison* to suggest that the Court intended the location of an investor placing a buy order to be determinative of whether such a transaction is 'domestic' for purposes of [section] 10(b)."); *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 178 (S.D.N.Y. 2010) ("[A]s a general matter, a purchase order in the United States for a security that is sold on a foreign exchange is insufficient to subject the purchase to the coverage of [the federal securities laws]."). The same result applies here.

Finally, Plaintiff's claims would be impermissibly extraterritorial even if his 2020 Purchase could be considered a domestic transaction, which it cannot. A domestic transaction is necessary, but not sufficient, to overcome the presumption against extraterritoriality. *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014). In *Parkcentral*, the Court of Appeals acknowledged that "false statements may have been intended to deceive investors worldwide," but affirmed dismissal because the claims were related to a foreign company traded primarily on a foreign exchange, and thus "the relevant actions . . . are so predominantly" foreign as to violate the presumption against extraterritoriality. *Id.* Similarly here, the alleged solicitations (i) emanated from a Swiss company; (ii) were allegedly directed worldwide; (iii) were allegedly made in connection with an ICO that excluded U.S. purchasers and, by its own terms and conditions, was governed by Swiss law (Ex. 6, at *15); and (iv) relate to a token to which Plaintiff gained access only through a third-party foreign exchange located in Samoa, whose terms and conditions provide that all disputes are governed by Samoan law (Ex. 4). By any measure, those allegations are "predominantly foreign" and fall outside the territorial scope of the Securities Act.

**B.     The TAC Fails To Plead Facts Establishing That Defendants Were "Statutory Sellers"**

The TAC also fails to plead that Defendants were "statutory sellers," as required by both Section 12(a)(1) and its Florida Blue Sky counterpart.   Liability under Section 12(a)(1) of the Securities Act is limited to a specific and narrow set of participants in securities transactions. Specifically, Section 12 liability is limited to "statutory sellers."  *Pinter v. Dahl*, 486 U.S. 622, 643– 47 & n. 21 (1988).[6]  A defendant qualifies as a statutory seller "if he: (1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'"  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quoting *Pinter*, 486 U.S. at 642, 647).

To plead that a defendant "passed title" sufficiently to satisfy the first prong of the *Pinter* test, a plaintiff must allege that he was in privity with the defendant and actually purchased his shares directly from the defendant.  *Pinter*, 486 U.S. at 644 n.21; *see also Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*, 2001 WL 300733, at *10 (S.D.N.Y. Mar. 28, 2001) ("[P]laintiffs here did not purchase directly from [defendant] and thus lack standing under the first prong of *Pinter*."); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 CIV. 8058, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) ("As plaintiff has alleged only that NACC was 'part of the chain of title' and not that NACC directly sold the Certificates to it, plaintiff cannot satisfy the first prong of *Pinter*.").  Prong two of *Pinter* tests whether the defendant "successfully solicited" the plaintiff's purchase.  "[T]o be a solicitor seller, the defendant must have *directly* 'urged' or sought to 'persuade' the buyer to

---

[6] Florida follows federal law on this point. *See In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 372 n.40 (S.D. Fla. 1991) ("Although no case to this Court's knowledge has specifically addressed the issue, this Court determines that conduct sufficient to constitute solicitation for the purposes of satisfying § 517.211 liability is similar to that deemed sufficient by the Supreme Court in *Pinter v. Dahl* to hold one liable as a 'seller' under § 12(2) of the Securities Act of 1933.")

purchase the securities." *F.W. Webb Co. v. State St. Bank & Tr. Co.*, 2010 WL 3219284, at *16 (S.D.N.Y. Aug. 12, 2010) (quoting *Pinter*, 486 U.S. at 644, 647).  Further, a plaintiff "must allege not only that [Defendants] actively solicited investors, but that [he] purchased the securities *as a result of* [Defendants'] solicitation." *Steed Fin. LDC*, 2001 WL 1111508, at *7.

The TAC's allegations fail to satisfy either prong of *Pinter*.  Plaintiff fails to allege that any Defendant passed title to him.  Accordingly, Plaintiff cannot satisfy the first prong of *Pinter*.

Plaintiff also fails to satisfy the second prong of *Pinter*.  The TAC does not even *attempt* to allege that Defendants "directly urged or sought to persuade [Deutsch] to purchase the securities." *Webb Co.*, 2010 WL 3219284, at *16.  The TAC does not contain a single alleged communication by any Defendant with Deutsch.  Nor does the TAC allege that Deutsch "purchased the [SNT] *as a result of* [Defendants'] solicitation." *Steed Fin. LDC*, 2001 WL 1111508, at *7. To the contrary, the TAC strikingly does not *mention* Deutsch's 2020 Purchase at all (relegating mention of it solely to his PSLRA Certification), much less plead facts establishing that it was the result of Defendants' alleged solicitation.

Unable to plead that Defendants (i) sold him SNT or (ii) directly solicited and actually caused his purchase, Plaintiff instead relies on a different approach: he claims that Defendants solicited *all* secondary market purchases, including his own, through public statements posted on the Internet and distributed worldwide (the "Entire Secondary Market Theory").  ¶¶ 7-8.  In support of this Entire Secondary Market Theory, Plaintiff alleges that Defendants (a) published their Whitepaper concerning SNT (¶ 55), (b) maintained a globally available website (¶¶ 63-65), (c) maintained a globally available app (¶¶ 65-70), (d) attended a blockchain conference in Denver at some unspecified time (¶ 74), (e) attended two blockchain conferences in New York in 2019 (*id.*), and (f) held a product "launch party" in New York in February 2020 (*id.*).

Plaintiff's Entire Secondary Market Theory fails to satisfy *Pinter* and its progeny for two

reasons.  <u>First</u>, the TAC fails to allege that Deutsch was even *aware* of any of these alleged acts of solicitation: Deutsch is not alleged to have read Status's Whitepaper, visited its website, used or even downloaded its app, read any of its Twitter posts, attended the Denver or New York conferences, or attended the alleged February 2020 launch party (a party which, in any case, took place one month *after* his January 2020 purchase).  ¶¶ 55-74.   Given his lack of awareness of any of Defendants' alleged acts, Deutsch fails to allege that he purchased SNT in January 2020 "as a result of" Defendants' alleged solicitations.  *Steed Fin. LDC*, 2001 WL 1111508, at *7.  For this reason alone, Deutsch fails to plead that any Defendant was a "statutory seller" to him under *Pinter*. *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *4 (S.D. Fla. May 13, 2019) (dismissing Section 12(a)(1) claim where there was no allegation that defendants' alleged Twitter activity "was a *successful* solicitation . . . or that Plaintiffs even saw the posts") (emphasis in original).

<u>Second</u>, nearly all of Defendants' alleged acts of solicitation are nothing more than (i) general statements about developments in Status's business and (ii) information about its products and services.  As a matter of law, such statements are not considered solicitations for purposes of the securities laws.  *See* 17 CFR § 230.169; *see also Brody v. Homestore, Inc.*, No. CV02–08068FMCJWJX, 2003 WL 22127108, at *5 (C.D. Cal Aug. 8, 2003) (holding that defendants' multi-city road show tour during which they "presented highly favorable information about the Company, including forecasts of strong revenue and profit growth" to potential investors was insufficient to bring defendants within the statutory seller definition of Section 12).  If the law were otherwise, every public statement by every company could be deemed a solicitation.[7]

---

[7] For example, the TAC alleges that: "Status was also represented at the Ethereum Denver conference, and promoted its participation to individuals in the United States on social media, *including by stating that Status provided communication and messaging tools for the conference*." ¶ 74.  Status provides communication and messaging tools for its customers, including a secure messaging app (the "App"). *See* https://status.im; *see also* ¶ 65.  The alleged fact that Status did so at the Ethereum Denver conference, and touted that fact on social media, does not amount to a solicitation of Deutsch or anyone else.

Deutsch's strained attempt to allege that a hodgepodge of "generalized solicitations using statements posted on the Internet and distributed throughout the United States and worldwide" (¶ 8), none of which he was even aware of, transform Defendants into "statutory sellers" to him under *Pinter* flies in the face of settled law and should be rejected.

### C.     Deutsch's Claims Are Untimely Under The Relevant Statutes Of Limitations And Repose

#### 1.     Deutsch's Claims Are Untimely Under The Statute Of Limitations

Actions brought under Section 12(a)(1) of the Securities Act are untimely "unless brought within one year after the violation upon which it is based."  15 U.S.C. § 77m.  In contrast to Section 12(a)(2), which governs misstatements in connection with prospectuses, Section 12(a)(1)'s statute of limitation is not subject to a "discovery rule."  *Compare* 15 U.S.C. § 77m (action brought under 12(a)(1) is untimely "unless brought within one year *after the violation* upon which it is based") *with id.* (action brought under 12(a)(2) is untimely unless "brought within one year *after the discovery* of the untrue statement or the omission").  Thus, actions brought under Section 12(a)(1) are untimely unless brought within one year of the "violation upon which it is based," regardless of when the alleged violation was discovered.  *See, e.g.*, *Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*, 2010 WL 6864006, at *2 (S.D.N.Y. Dec. 14, 2010) ("As the text demonstrates, § 12(a)(1) is not subject to a discovery rule.");  *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012) ("[T]he fact that the statute plainly fails to include a discovery rule for § 12(a)(1)—when juxtaposed with a provision within the same sentence specifically allowing it for § 12(a)(2)—shows that Congress intended to negate equitable tolling in this context.").  Florida's Blue Sky law has a two-year statute of limitation, and similarly is not subject to a discovery rule.  *GLK, L.P. v. Four Seasons Hotel Ltd.*, 22 So. 3d 635, 637–38 (Fla. Dist. Ct. App. 2009) (holding that Florida's "delayed discovery rule" does not apply "to cases where plaintiffs allege the sale of an unregistered

security").[8]

As explained above, Defendants did not sell any securities directly to Plaintiff, and therefore the sole potential basis for liability is premised on the alleged solicitations by Defendants. Thus, those solicitations *are themselves* the purported violations upon which this action is based. Accordingly, this action is untimely unless brought within one year of the alleged solicitations. *See, e.g., In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *4 (S.D.N.Y. June 4, 2012) (SoL runs from event that triggers liability, which may not be the last purchase).

With respect to the 2020 Purchase, the threshold questions with respect to the SoL are: (i) what act(s) of solicitation by Defendants are alleged to have caused that purchase and (ii) did those act(s) occur within one year (for the federal claims) or two years (for the Florida claims) of the date Deutsch filed suit? While Deutsch's *purchase* occurred shortly before he filed suit, it is nonetheless clear that his TAC fails to allege any *acts of solicitation by Defendants that induced his purchase* that occurred within one year or two years of the date he filed suit (*i.e.*, any acts by Defendants within one year or two years of July 28, 2020, the date of Deutsch's first pleading). Given the TAC's failure to allege any such acts by Defendants, any claims based on the January 2020 Purchase are untimely.

### 2.   Deutsch's Federal Claims Are Untimely Under The Statute Of Repose

Plaintiff's Securities Act claims are untimely for a second reason: they are clearly barred

---

[8] While Plaintiff's claims are clearly not subject to any discovery rule, the TAC fails to plead any facts to establish that Deutsch was not aware of all relevant facts in 2017, when he first purchased SNT. Plaintiff claims that "[He] and the Class reasonably did not realize that they were in a position to bring claims . . . until, at the earliest, April 3, 2019, when the SEC clarified the legal paradigm for assessing the security status of crypto-assets like SNT." ¶ 122. But Plaintiff's attempt to rely on a purported change in the law in April 2019 fails on its face. The SEC's April 3, 2019 *Statement on "Framework for 'Investment Contract' Analysis of Digital Assets"* explicitly states that "[i]t does not modify or replace any existing applicable laws, regulations, or rules." SEC, *Framework for "Investment Contract" Analysis of Digital Assets* (2019), https://www.sec.gov/corpfin/framework-investment-contract-analysis-digitalassets#_ednref9 [https://perma.cc/3G6P-GG85]; *see also Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1374 (S.D. Fla. 2013) (holding that applying the delayed discovery rule to a claim for the sale of unregistered securities would be illogical because "[a] seller of securities cannot conceal the fact that the securities he sells are not registered.") (quoting *GLK* at 637-38).

by the Securities Act's three-year statute of repose.  15 U.S.C. § 77m ("In no event shall any such action be brought to enforce a liability created under section . . . 77l(a)(1) of this title more than three years after the security was bona fide offered to the public.").  In the context of allegedly unregistered securities, the statute of repose runs from when the alleged security is "first offered" to the public.  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 106 (2d Cir. 2004).

A statute of repose is an absolute outer limit on liability.  *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014).  Therefore, the Supreme Court has "repeatedly [] stated in broad terms that statutes of repose are not subject to equitable tolling."  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017) (citing cases).  In light of the strict nature of statutes of repose, a class representative must file their action within the statute of repose period to be timely.  This is true even where a prior plaintiff filed an initial complaint within the class period.  *See, e.g.*, *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 153–54 (S.D.N.Y. 2017) ("Because Harris was time-barred from raising any individual claims at the time of her entry into this case . . . she should not have been permitted to serve as lead plaintiff."); *De Vito v. Liquid Holdings Grp., Inc.*, No. 15 Civ. 6969, 2018 WL 6891832, at *22 (D.N.J. Dec. 31, 2018) (holding named plaintiff's claim untimely where "[i]t was only after the expiration of the statute of repose . . . that the [] Plaintiff was added by amendment").

Here, Plaintiff did not file his first pleading in this action until July 28, 2020.  Dkt. 42.  But that was more than three years after Status's June 20, 2017 ICO, the date the purported securities were first offered to the public.  ¶¶ 6, 58.  Plaintiff cannot benefit from the April 3, 2020 complaint filed in this action by Clifford, because Deutsch was not a named plaintiff in that complaint.  Dkt. 1.  The relation-back doctrine and other equitable tolling principles do not apply to the statute of repose.  *See Pol. & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 106-09 (2d Cir. 2013).

Nor does Plaintiff's assertion that he "filed his motion to serve as lead plaintiff within the

repose period," Dkt. 70 at *2, save his claim.  On the contrary, "[t]he plain language of [the PSLRA's lead-plaintiff] statute is testament to the fact that a motion to be appointed as lead plaintiff is not the same as a formal motion to intervene," and a motion for lead plaintiff does not "dispense[] with the necessity of formally intervening." *Employers-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital Advisors*, 498 F.3d 920, 924 (9th Cir. 2007).  Plaintiff's TAC contains no new allegations that could possibly cure this defect.  As such, all of Plaintiff's Securities Act claims are untimely under the statute of repose and must be dismissed.

**D.      Plaintiff's Section 15 Claim Should Be Dismissed Because It Is Derivative Of His Flawed Section 12(a)(1) Claim**

Plaintiff also alleges that, pursuant to Section 15(a) of the Securities Act, Defendants Hope and Bennetts are "control persons" of Status and are thus jointly and severally liable for any violation of the Act by Status.  ¶ 149. "In order to state a claim for control person liability under Section 15 of the Securities Act, a plaintiff must allege (a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator." *In re Scottish Re Grp. Sec. Litig.*, 524 F.Supp.2d 370, 387 (S.D.N.Y. 2007).  For the reasons above, the TAC fails to state a claim for liability under Section 12(a)(1).  Accordingly, the Court should dismiss the derivative Section 15 claims as well.  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010).

**E.      The Court Should Dismiss The Remaining State Blue Sky Claims**

Plaintiff has failed to state a claim under both the Securities Act and the Florida Blue Sky law.  The only state in which Plaintiff alleges that he purchased SNT is Florida; as such, he cannot state a claim for violation of the remaining Blue Sky claims.  These other claims necessarily fail pursuant to the Dormant Commerce Clause and the relevant Blue Sky statutes themselves, as the Blue Sky laws apply solely to transactions that occur within the state whose laws are being

invoked.  *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 156 (2d Cir. 2017) ("[B]lue-sky laws. . . only regulate[] transactions occurring within the regulating States."); *see also Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 106 (2d Cir. 2019) ("[T]he United States Constitution would also bar Massachusetts from regulating, via consumer protection law, the rates that Direct Energy charged consumers in Connecticut."). Accordingly, Plaintiff cannot pursue the Blue Sky law claims of any state other than Florida.

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

Plaintiff's attempt to sue Defendants based on his profitable 2020 Purchase suffers from yet another flaw: his TAC fails to plead facts sufficient to establish personal jurisdiction over Defendants, all of whom are foreign parties residing abroad.

### A.   The TAC Fails To Plead General Jurisdiction Over Status

To establish general jurisdiction over a corporation, a plaintiff must show that the corporation's contacts with the forum "are so continuous and systematic as to render it essentially at home in the forum." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016), quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014).  The Second Circuit has recognized that "*Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business— the 'paradigm' cases." *Id.* (noting that several other courts of appeal "have agreed with this reading of *Daimler*").

Status is neither incorporated within the United States, nor does it maintain *any* place of business within this country, much less its principal one.  And Deutsch cannot plausibly contend that the TAC's sparse allegations with respect to Status's contacts with the United States render this case "exceptional." *See id.* at 629 (holding that "not insubstantial" business in a forum, which constitutes only a subset of a company's portfolio, fails to establish general jurisdiction); *see also*

*Lopez v. Shopify, Inc.*, 2017 WL 2229868, at *7 (S.D.N.Y. May 23, 2017) *report and recommendation adopted*, 2018 WL 481891 (S.D.N.Y. Jan. 17, 2018) (holding that "collective contacts," including trading on the New York Stock Exchange, having "multiple customers in New York," running several promotional events in the state, and having a permanent office in the state, "still cannot support general jurisdiction under *Daimler*").

### B.   The TAC Fails To Plead Specific Personal Jurisdiction Over Status

To establish specific personal jurisdiction, a plaintiff must first allege that the Defendant has sufficient minimum contacts with the forum such that hailing the defendant into court in the forum state does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Second, the plaintiff must allege that his claims "arise from the defendants' purposeful contacts with the forum." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018).  The TAC fails to do either.

#### 1.   Plaintiff Fails To Plead Sufficient Minimum Contacts With The United States

The TAC contains no allegations that rise to the level of purposeful availment of, or direction towards, the United States.  Deutsch's only alleged purchase of SNT occurred through a third-party foreign exchange, and it is axiomatic that such "unilateral activity of another party or a third person" cannot be imputed to Defendants for purposes of establishing jurisdiction. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 417 (1984).

Unable to allege that Status sold any SNT to Deutsch (or any other U.S. residents), Plaintiff claims that Status targeted the United States through "generalized solicitations using statements posted on the Internet and distributed throughout the United States and worldwide," as well as by attending a handful of blockchain "conferences."  ¶ 74.  But Plaintiff's hodgepodge of alleged acts by Status fail to establish sufficient minimum contacts under settled law:

**Status's Website.**  Plaintiff alleges that Status targeted the United States by "maintaining an interactive commercial website" that was "accessible to U.S. users," "uses English as the default language and uses U.S. dollars as the default currency." ¶ 8, 64-65. But operating a website accessible to U.S. persons does not rise to the level of purposeful direction at the United States and is routinely held insufficient to establish specific jurisdiction, particularly where (as here) Plaintiff himself did not conduct any commercial activity through that website. *See, e.g., Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) ("[T]he mere availability of the site to users in [the forum], standing alone, does not" confer jurisdiction."); *Rozhetskin v. Reiman*, No. 06 Civ. 7119 (LAK), 2007 WL 3254911, at *1 n.1 (S.D.N.Y. Oct. 31, 2007) ("The posting of press releases on web sites that are available in New York State does not, without more, constitute the transaction of business here.").

Use of English and quoting commodity prices in dollars also carry no weight because English is a global language and global commodities are generally priced in dollars. *See, e.g., Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11 Civ. 420 (RJH), 2012 WL 204102, at *6 (S.D.N.Y. Jan. 24, 2012) (finding allegations that defendant transacted in dollars were insufficient to establish minimum contacts with the United States).

**Status's App.**  Plaintiff also makes similar allegations with respect to Status's App.  *See* ¶ 65 (alleging that Status's app "is accessible to U.S. users through major mobile 'app stores' such as the Apple App Store and Google Play, and uses English as the default language and U.S. dollars as the default fiat currency").  But those allegations about Status's globally accessible App fail for the same reasons as Plaintiff's allegations about Status's globally accessible website.  *Jewell v. Music Lifeboat*, No. 16–cv–1587 (NG) (PK), 254 F. Supp. 3d 410, 420 (E.D.N.Y. 2017) (no basis for specific personal jurisdiction over developer of a mobile app that allowed users to make in-app purchases where there were no allegations that developer purposefully and knowingly entered into

any transactions with New York residents or otherwise targeted New York for business).

**Status's Use Of Social Media.**  Similarly, Plaintiff's allegations concerning Status's use of social media fails to support an exercise of personal jurisdiction.  Posting on social media platforms like Twitter does not constitute purposeful direction at the United States. *See, e.g., Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*, No. 18-cv-3528 (SFJ)(ARL), 2019 WL 2504039, at *10 (E.D.N.Y. June 17, 2019) ("To the extent Plaintiff relies upon [the defendant's] Twitter posts to establish a nexus to New York, the Court also finds more persuasive [the] argument that" Twitter is "a world-wide, on-line news and social networking site," and thus posts "do not create claim-related contacts with the forum, even if people within the forum state can see them.").

**Status's Attendance Of Three Conferences And One Party.**  Finally, Plaintiff attempts to establish jurisdiction on the basis of a handful of events that took place in the United States: one blockchain conference in Denver, two conferences in New York, and a February 2020 product "launch party" in New York.  ¶ 74.  But these events clearly fail to establish purposeful availment. *See, e.g., C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323–24 (10th Cir. 2019) (finding that defendant's "attendance at various tradeshows in Colorado" was "not the 'purposeful availment' required for a finding of specific jurisdiction").

    2.    <u>Plaintiff's Claims Do Not Arise Out Of The Alleged Domestic Contacts</u>

The TAC also fails to link—or to even *attempt* to link—any of Defendants' alleged domestic contacts to Plaintiff or his claims.  Plaintiff does not allege that he ever visited the Status website, used (or even downloaded) Status's App, attended (or was even aware of) the alleged conferences or party, or saw any of the social media posts—much less claim that his 2020 Purchase arose out of them.  This glaring omission in the TAC—Plaintiff's counsel's *fourth* pleading in this case—decisively establishes that the TAC fails to plead specific personal jurisdiction.

### C.     There Is No Basis For Personal Jurisdiction Over The Individual Defendants

The TAC's shortcomings with respect to personal jurisdiction over Status all apply with equal, and even greater, force with respect to the individual defendants.  There are virtually no allegations about Defendants Bennetts or Hope at all in the TAC, much less allegations sufficient to establish personal jurisdiction.  The TAC alleges only their titles and that their profiles were mentioned in the Whitepaper, and on that basis asserts in conclusory fashion that they were control persons of Status.  ¶¶ 108, 145-49.  Those allegations do not justify exercising personal jurisdiction over the Individual Defendants because a person's status as control person, alone, is "insufficient to warrant the conclusion that [his] contacts with the United States satisfied the requirements of due process." *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005); *see also FDIC v. Milken*, 781 F. Supp. 226, 234 (S.D.N.Y. 1991) ("[C]ontrol person liability under the securities laws is not germane to the issue of personal jurisdiction."). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783 (1984); *King Cty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 321 (S.D.N.Y. 2011) (dismissing claims against individuals based on the "mere fact of their positions" and noting that "[c]ourts in this district have ... routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand").

## CONCLUSION

Despite four pleadings and two proposed class representatives, Plaintiff's counsel could not find even a single individual who did anything other than *profit* from SNT.  Though Deutsch misguidedly strains to proceed with his claims here—in a forum whose only connection to this dispute is the location of Plaintiff's counsel's offices—the record establishes multiple glaring defects requiring dismissal with prejudice.

Dated: December 3, 2020

/s/ Tibor L. Nagy, Jr.

**DONTZIN NAGY & FLEISSIG LLP**
Tibor L. Nagy, Jr.
Tracy O. Appleton
980 Madison Avenue
New York, New York 10075
Tel: 212.717.2900

*Attorneys for Defendants*
*Status Research & Development GMBH,*
*Jarrad Hope, and Carl Bennetts*